**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  13-CR-0203 (RJL)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARQUETTE BOSTON,** | : | |
| **DAWAYNE BROWN, and** | : | |
| **KEITH MATTHEWS** | : | |
| **Defendants.** | : | |

<u>NOTICE OF FILNG OF GOVERNMENT'S MEMORANDUM IN AID
OF INTRODUCTION OF TEXT MESSAGES</u>

The Government submits this memorandum to assist the court in permitting the

introduction of text messages in evidence in this case.  Text messaging, otherwise known as

short message service ("SMS"), involves the transmission of electronic written communications

over cellular phones or pagers from one individual to another.   This memorandum addresses a

number of the issues raised by the Court.

I.     <u>Admissibility and Authentication of Text Messages as Party Admissions and
Co-Conspirator Statements</u>.

As has been discussed, courts have almost universally held that electronic text messages

are admissible against defendants at trial, either as statements by a party opponent, or as co-

conspirator statements made in furtherance of the conspiracy.  <u>See, e.g.</u>, <u>United States v.</u>

<u>Thompson</u>, 568 Fed. App'x 812, 817-818 (11th Cir. 2014) (admitting text messages between

conspirators using slang terminology such as  " "Your boy still on deck?;" "Prolly if u get 5 or

better u could get it for 8;" "Either way u can't lose;" "We coming big for the 8 a pop;" "You

gotta work with us and you'll eat good;" whether his "boy" was "strait;" "How much u gettin;"

"Aight do ur thing;" "could do it for 850 but u gta get 4; " "u back out last min;" "Yeah all cash

but it got 2 b 48;" "a lot of bread on da [l]ine," "Make sure u feel homeboy out it has 2 b smooth

sailin;" "we got everything on deck the first halph for 8 and the second for 8 don't make shit hard it would b ez 4 everybody");  United States v. Giles, 518 Fed. App'x 181, 185 (4th Cir. 2013) (text messages found on defendant's phone were admissible as co-conspirator statements); United States v. Teran, 496 Fed. App'x 287, 292 (4th Cir. 2012) (defendant's text messages were easily authenticated, as jury only needed to find the "evidence is what the proponent claims"); United States v. Mebrtatu, 543 Fed. App'x. 137, 140 (3d Cir. 2013) (finding that text messages on the cell phone recovered from the defendant during her arrest were properly authenticated because the phone was found on the defendant's person and the content of the messages indicated the defendant was the user of the phone); United States v. Ortega, 478 F. App'x. 871, 875 (5th Cir. 2012) (text messages seeking to purchase illegal narcotics served as circumstantial evidence of defendant's knowledge, and DEA expert's testimony interpreting the text messages was proper); United States v. Sterlin, 466 Fed. App'x 792, 796 (11th Cir. 2012) (text messages were properly admitted as evidence and that jury could infer statements from the defendants based on their phone numbers);  United States v. Hunter, 2008 WL 399150 (9th Cir. 2008) (text messages sufficiently authenticated by testimony of service provider and co-conspirators); United States v. Engler, 521 F.3d 965 (8th Cir. 2008) (admitting content of text message as evidence of co-conspirator statement even though sender of the text was unknown when texts demonstrated that sender was a co-conspirator); United States v. Hunter, 266 Fed. App'x 619, 621 (9th Cir. 2008) (text messages and summary of texts were properly authenticated and admissible); United States v. Fuentes, 2014 WL 5543650 at *1-4 (E.D. Wash. Oct. 31, 2014) (denying defendant's motion to exclude text messages using language such as :"I likely won't respond cuz' I'm sleeping;" "Fore sure;" "my bill didn't get paid so u getting this text;" "k;" "Haaha lol I know;"  "were u want me to go;"  "Alrite man;" "Headed to the front;" "Got ya;" "Just waiting for dude;" "He's

going to call and see were he's at;" "Will u call my po tell him I might be a lil late there;" "Alrite thanx man;" "Should b in the next 10"); <u>United States v. Ellis</u>, 2013 WL 2285457 at *2-*4 (E.D.N.Y. May 23, 2013) (permitting incoming and outgoing text messages into evidence drug conspiracy case in furtherance of the conspiracy); <u>United States v. Barret</u>, 2012 WL 17321 *2-4 (E.D.N.Y. January 20, 2012) (text messages even after conspiracy ended were admissible, and noting defendant's text messages from phone recovered at arrest was admitted without objection at trial); <u>United States v. Akefe</u>, 2010 WL 2899805 at *6, July 21, 2010 (text messages admissible at trial and included texts such as: "what car u have so i know is u? bring money;" "Dont have a car so am on a ride will call u when am on d way;" "u in jeep?;" "No am at work after will come c u;" "is ur friend in jeep outside?").  As can be noted in the parentheticals above, many of these cases involved short-hand text communications which are akin to those in this case.  Additionally, courts have recognized that text messages can be admitted as co-conspirator statements even where the actual party to the text messages is unknown.  <u>See</u> <u>Engler</u>, 521 F.3d at 973 (text messages from defendant to unknown person was properly admitted as co-conspirator statements where the message was found to be in furtherance of the conspiracy).

Pursuant to Rule 901(a) of the Federal Rules of Evidence, evidence is properly authenticated (and admissible if relevant) if the proponent of evidence presents "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Common methods of authentication for text messages include the location of the phone containing the text messages at issue, and testimony by persons with personal knowledge.[1]

---

[1] For instance, in <u>Mebrtatu</u>, the Third Circuit held that the government presented substantial evidence from which a jury could conclude that the text messages were authentic and attributable to the defendant based on testimony that the phone containing the text messages was found on the defendant and that the content of the messages indicated that the defendant was the sender and receiver of those messages. 543 Fed. App'x. 137, 140.  Similarly, in <u>United States v. Teran</u>, the Fourth Circuit found that evidence of threatening text messages received by a trial

## II.     Interpretation of Recorded Communications is Routine and Proper

Courts have regularly permitted witnesses to discuss and interpret words used in recorded communications and specifically text messages.  See, e.g., United States v. Wilson, 605 F.3d 985, 1026 (D.C. Cir. 2010) (recognizing admissibility of opinion testimony to understand wiretap conversations); Thompson, 568 Fed App'x at 821 (permitting case agent to testify about the meaning of text messages); United States v. Vinales, 564 Fed. App'x 518 (11th Cir. 2014) (finding testimony by the case agent assigned to the defendant's case interpreting the meaning of code words in intercepted phone calls); United States v. Kilpatrick, No. 10-20403, 2013 WL 4029084, at *22 (E.D. Mich. Aug. 8, 2013) (agent's testimony interpreting text messages was properly admitted under Rule 701 because the "lay opinion testimony was properly shown to be rationally based on the agent's first-hand perception of the text messages" and given the text messages' use of "informal short-hand with little or no explanatory detail," the jury would not have understood the text messages without some background or context in the form of lay opinion interpreting "the meaning of the abbreviations, shorthand, or nicknames" used "to

---

witness were properly authenticated because the witness testified as to the personal nature of the messages, including the threats to his family and how they were consistent with the defendant's knowledge of his family. 496 Fed. App'x. 287, 292 (4th Cir. 2012).  Thus, the court held that the district court did not abuse its discretion because a reasonable juror could infer that the text messages were sent by the defendant or an associate of the defendant.  *Id.*

  Another judge in the U.S. District Court for the District of Columbia has similarly concluded that other forms of electronic evidence, such as email, may be authenticated by reference to its "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances." Fed. R. Evid. 901(b)(4); see United States v. Safavian, 435 F. Supp. 2d 36, 40 (D.D.C. 2006).  In Safavian, a prosecution arising from the Jack Abrahamoff lobbying scandal, the government sought to admit 260 emails from the server of Abrahamoff's firm.  435 F. Supp. 2d at 38-39.  The district court held that the government had made a sufficient showing of authenticity because, among other things, "these e-mails contain the name of the sender or recipient in the bodies of the e-mail, in the signature blocks at the end of the e-mail, in the 'To:' and 'From:' headings, and by signature of the sender. The contents of the e-mails also authenticate them as being from the purported sender and to the purported recipient, containing as they do discussions of various identifiable matters." Id. at 40.

reference individuals, companies, or business transactions"); <u>Sate v. Mclean</u>, 16 A.3d 332, 344

(N.J. 2011) (recognizing that "lay witness was permitted to offer an opinion about the meaning

of street slang that the defendant used during a conversation relating to a crime because it was

'unfamiliar to the average juror . . . was of assistance in determining the meaning and context of

his conversation with defendant and was obviously relevant to the issue of . . . motive and

intention" (citation omitted); <u>State v. Cook</u>, 2013 WL 9570493 at *9 (Tenn. Crim. App. Sept. 4,

2013), (lay testimony interpreting phone calls and text messages was permissible when the basis

for the agent's opinion rests on "his own observations and perceptions derived from [the]

particular case").

       The key question in this jurisdiction is whether the testimony permitting the interpretation

of certain words in the text messages is permitted as lay opinion or expert opinion.  Federal

Rules of Evidence 701 and 702 govern the lay opinion and expert opinion testimony,

respectively. Rule 701 states:

> If a lay witness is not testifying as an expert, testimony in the form of an opinion
> is limited to one that is: (a) rationally based on the witness's perception; (b)
> helpful to clearly understand the witness's testimony or to determining a fact in
> issue; and (c) not based on scientific, technical, or otherwise specialized
> knowledge within the scope of Rule 702.

Fed. R. Evid. 701. On the other hand, Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue . . . . "

Fed. R. Evid. 702. In the context of government agent testimony, there is a fine line between lay

opinion testimony and that which constitutes expert opinion testimony. <u>See</u> <u>U.S. v. Miller</u>, 738

F.3d 361, 371 (D.C. Cir. 2013).  It is also axiomatic that the same witness may offer lay and

expert opinion testimony in a case.  <u>See</u> FRE Advisory Committee at §701 (citing <u>United States</u>

v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997); United States v. Smith, 640 F.3d 358,

365, n.3 (D.C. Cir. 2011) (acknowledging "no bar in this Circuit" to dual testimony as fact and

expert witness).

      Over the years, the D.C. Circuit has centered its decisions regarding whether a particular

officer's testimony was permissible lay opinion testimony pursuant to Rule 701, or expert

opinion testimony pursuant to 702, on the witness' basis of knowledge for his or her opinion.

See id. (finding the line drawn between Rules 701 and 702 is between particular knowledge and

general knowledge derived from previous professional experience); United States v. Hampton,

718 F.3d 978, 981-82 (D.C. Cir. 2013) (finding a government witness's testimony unable to

satisfy Rule 701 because the witness failed to identify the "objective basis for his opinion" and

thus the Court could not determine whether the opinion was based on the witness's perceptions

as required by Rule 701); ); Smith, 640 F.3d at 365 (finding testimony based on prior

investigations was "specialized knowledge" which was properly presented under FRE 702, not

FRE 701); United States v. Wilson, 605 F.3d 985 (D.C. Cir. 2010) (witness's firsthand

experience with a particular drug investigation determined whether witness was offering lay

opinion or expert opinion). The 2000 Amendments to Rule 701 are consistent with this approach.

In particularly, the FRE Advisory Committee made clear that the key feature of permissible lay

opinion testimony is that it "'results from a process of reasoning familiar in everyday life,' while

expert testimony 'results from a process of reasoning which can be mastered only by specialists

in the field.'"  FRE Advisory Committee §701 (quoting State v. Brown, 836 S.W.2d 530, 549

(Tenn. 1992).  This distinction which has been recognized by the 2nd Circuit, see, e.g., United

States v. Garcia, 413 F.3d 201, 213-15 (2nd Cir. 2005) (quoting same language from FRE

Advisory Committee), which was followed by the D.C. Circuit in both Hampton, 718 F.3d at 333

(citing <u>Garcia</u>), and <u>Miller</u>, 738 F.3d at 373 (same), and the D.C. Court of Appeals, <u>see</u> <u>King v.</u>

<u>United States</u>, 74 A.3d 678, 682 (D.C. 2013) (Washington, C.J.) (following FRE and Second

Circuit analysis in <u>Garcia</u>).

### A.  **Street jargon and case specific information based on personal experience and case experience should be introduced via lay opinion testimony**.

Because the dividing line between FRE 701 and 702 in this context is the basis of

knowledge of the opinion by the witness, where a government agent offers lay opinion about

street lingo or slang based upon "personal experiences and observations interacting with youth in

the D.C. streets while investigating crimes," that testimony is properly viewed as knowledge

which can be "acquired from personal experiences talking to people on the street that are

accessible to an average person," and admissible under FRE §701.  <u>King</u>, 74 A.3d at 682, 683

(permitting MPD officers to provide lay opinion about meaning of D.C. street lingo such as

"gleezy," "kill," "bag," "hot," "kirk out," and "UUV" in recorded jail calls); <u>see also</u> <u>Kilpatrick</u>,

2013 WL 4029084, at *22 (E.D. Mich. Aug. 8, 2013) (in case involving over 300,000 text

messages relevant to the conspiracy, case agent's testimony interpreting text messages was

properly admitted under Rule 701).  Such lay opinion is also permissible where the individual is

"testifying about the operations of a drug conspiracy because of knowledge of that drug

conspiracy."  <u>Wilson</u>, 605 F.3d  at 1026; <u>see also</u>, <u>United States v. Vinales</u>, 564 Fed. App'x 518

(11th Cir. 2014) (finding testimony by the case agent assigned to the defendant's case

interpreting the meaning of code words in intercepted phone calls to be permissible lay opinion

testimony under Rule 701 because the agent "had been in the wire room for the intercepts, and he

had listened to the recordings and authenticated them at trial"); <u>Mclean</u>, 16 A.3d at 344 (N.J.

2011) (interpretation of street slang was permissible lay opinion); <u>State v. Cook</u>, 2013 WL

9570493 at *9 (Tenn. Crim. App. Sept. 4, 2013), (lay testimony interpreting text messages was

permissible).  This rule applies beyond case agents, and applies to persons who are co-conspirators to the conspiracy, or who have experience communicating with the conspirators. See, e.g., United States v. Viramontes, 419 Fed. App'x. 938, 942 (11th Cir. 2011) (coconspirator who was not party to communications by conspirators could testify regarding code words).

While not specifically determined by the D.C. Circuit, where a government agent does offer lay opinion pursuant to Rule 701, it may be improper to allow testimony about "clear statements" or "plain English words and phrases."  Hampton, 718 F.3d at 983, n.3 (quoting cases, but indicating it "need not rely" on these cases).  In that same sentence, however, the Court of Appeals cited the case United States v. Rollins, 544 F.3d 3d 820, 831-832 (7th Cir. 2008).  In Rollins the court acknowledged that "impressions" testimony of recorded conversations under Rule 701 was proper when it was based upon agent's personal knowledge of the conspiracy, the conspirators used coded drug terms that sometimes were unique to each conversation.  Id.  Other courts have similarly permitted law opinion testimony to be provided where context-based interpretation was necessary.  See United States v. Albertelli, 687 F.3d 439, 447 (1st Cir. 2012) (permitting agent lay testimony was permissible where the wiretapped conversations were "unintelligible to jury absent some "context based interpretation"); United States v. Jayyousi, 657 F.3d 1085, 1102 (11th Cir. 2011) (permitting agent to offer lay opinion about the meaning of code words in recorded communications based upon their context and the agent's knowledge of the investigation).

### B.  Expert Opinion is required where the basis of knowledge is prior drug conspiracies and general knowledge of the drug trade

Where a government agent proffers testimony based solely on specialized knowledge or "on previous experiences with other drug conspiracies" the opinion should be admitted pursuant to FRE Rule 702 as an expert opinion.  See Smith, 640 F.3d at 365 (quoting Wilson, 605 F.3d at

1026).  Opinion testimony based on such prior experience regarding the organization, operation, and structure of a drug organization is such FRE 702 evidence.  Id.; Wilson 605 F.3d at 1026. As such, the government will take care to avoid asking questions of any witness which suggests their opinion is based upon recorded communications which are not presented to the jury, or otherwise invade into the province of the jury and conclude the meanings of the conversations. See Hampton, 718 F.3d at 983.


### III.   CONCLUSION

In light of the above, the government requests the Court permit admission of the requested text messages because it has properly authenticated records in this case, and there is no dispute as to their relevance.  Additionally, the government requests that the Court allow lay witnesses with appropriate background in local communication in the neighborhood at issue, or in the conspiracy -- whether through being the case agent, or as a person with specific knowledge of the crew, such as the recipient of the message or a coconspirator -- testify regarding the meaning of certain words contained in the text messages at issue.  Further, the government requests that an expert witness be permitted to testify as to the meaning of other words used in the text messages based upon that expert witness' knowledge of the PCP drug trade in Washington, D.C.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney


By:      _____/s/_____
         TEJPAL S. CHAWLA
         D.C. Bar. No. 464012
         GEORGE ELIOPOULOS
         D.C. Bar No. 390601
         Assistant United States Attorneys
         555 4th Street, NW
         Washington, DC 20530
         (202) 252-7280